**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CRIMINAL ACTION NO. 24-29-1-DLB**

**UNITED STATES OF AMERICA**                                                          **PLAINTIFF**

**VS.**                             **MEMORANDUM ORDER**

**GERMEL HUGHES**                                                                     **DEFENDANT**

*******************************

## I. Introduction

Defendant Hughes has moved to dismiss the indictment for improper venue, or alternatively, to transfer venue to the Southern District of Ohio (Doc. # 67). In his motion, Defendant argues that although the drugs did make their way into the Eastern District of Kentucky, because this judicial district otherwise has no relationship to the alleged crime or the Defendant's conduct, the indictment should be dismissed for improper venue. Alternatively, Defendant Hughes requests the Court transfer venue to the Southern District of Ohio (presumably at Dayton) (*Id.*) The United States having filed its response in opposition to the motion (Doc. # 70), and the Defendant also having filed his response relating to the timeliness of the motion (Doc. # 69), the motion is ripe for review. For the reasons that follow, the motion is **denied**.

As an initial matter, the Court ordered the parties to address why the motion should be considered timely filed under the Court's Pretrial and Trial Management Order (Doc. # 17 at ¶ 3). Upon review of the parties' filings relating to this issue, and in consideration

of this Court's February 14, 2025 Order (Doc. # 58), the Court finds that defense counsel has shown adequate good cause explaining why the motion was not filed within the time constraints set forth in Docket Entry 17 or Magistrate Judge Smith's directives (*See* Doc. # 36).   Therefore, the Court will proceed to address the motion on its merits.

## II.     Charges in the Indictment

Defendant Hughes is charged in a two (2) count Indictment.  More specifically, Count One charges Hughes, along with co-defendants Julius Cole and Gerald Young, with conspiring with one another, and others, to distribute and possess with intent to distribute controlled substances, including 100 grams or more of a mixture or substance containing a detectable amount of a fentanyl analogue.  Count Two charges Hughes, Cole and Young with aiding and abetting the possession with the intent to distribute a mixture or substance containing a detectable amount of a fentanyl analogue.   (Doc. # 1).

## III.    Factual Background

According to several filings in the record, including co-defendant Cole's written plea agreement (Doc. # 44) and the United States' Notice of Intent to Use Evidence (Doc. # 48), both counts involve Hughes and others' role in a January 3, 2024 sting whereby an informant had arranged to purchase one kilogram of fentanyl from the group.  In adjudicating the Defendant's motion, the Court considers these facts, as well as those set forth in Defendant's motion relating to where the drugs were ultimately intended to be delivered by the group.

On January 2, 2024, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) used a confidential informant (CI) to arrange a controlled purchase of fentanyl from

2

Earnest Bryson.  According to the government, Bryson agreed to sell one kilogram of fentanyl to the CI for $25,000.  The following day, Bryson picked up Julius Cole at a residence in Dayton, Ohio.  Bryson and Cole then traveled to another location in Dayton where they picked up Young, who became the driver for the remainder of the day.  The trio then traveled to a residence on Hudson Avenue in Dayton which was associated with Defendant Hughes.  The United States has represented that a cooperating witness will testify that Defendant Hughes gave Bryson the fentanyl while they were at the Hudson Residence in Dayton, and that the Defendant knew that Bryson's transaction with the CI was to occur in Kentucky.  According to the Government, Hughes gave instructions to destroy the drugs with soda if they were stopped by law enforcement.

After obtaining the fentanyl, Bryson, Cole, and Young subsequently left Dayton and drove to the Fort Wright, Kentucky, Walmart, where Bryson and the CI had previously agreed to meet to complete the fentanyl transaction.  During the trip from Dayton to Kentucky, Bryson made a FaceTime-type call to the CI in which he showed the CI the drugs, a bucket, and a 2-liter bottle of Coca-Cola.  During that call, Bryson told the CI that if they were stopped by law enforcement, they would destroy the drugs by pouring the drugs and the soda into the bucket.  The fentanyl was ultimately destined for Bowling Green, Kentucky, in the Western District of Kentucky.

However, the transaction did not go as planned.  Soon after they arrived in the Walmart parking lot, law enforcement officers parked behind their vehicle, activated their emergency lights, and ordered the three occupants out of the vehicle.  The occupants

3

refused to comply, and officers were forced to break the windows of the vehicle to forcibly remove them. Upon searching the vehicle, officers found that the interior was wet and covered in a soda and drug mixture. The occupants of the vehicle had done exactly what Defendant Hughes told them to do if police got involved.

The officers were able to recover some of the mixture and it was tested and found to contain a mixture or substance containing a detectable amount of fentanyl and an analogue of fentanyl. Bryson, Cole, and Young were arrested that day. Although Bryson was not charged for the January 3 conduct, he had previously been charged in the Western District of Kentucky a few days earlier. (*See United States v. Earnest Bryson, et al*, 23-CR-149 (WD-KY December 20, 2023).

## IV. Discussion

The United States Constitution provides that the venue for a criminal prosecution must be the district where the crime was committed. *See* U.S. Const. amend. VI. Federal Rule of Criminal Procedure 18 has codified this requirement by providing that "the prosecution shall be had in a district in which the offense was committed." Fed. R. Crim. P. 18. Congress has provided venue for continuous crimes, such as the conspiracy charge in Count One here, in any district where the "offense was begun, continued, or completed." *See* 18 U.S.C. § 3237(a).

The Government "bears the burden of proving by a preponderance of the evidence that venue [is] proper." *United States v. Beddow*, 957 F.2d 1330, 1335 (6th Cir. 1992). The Sixth Circuit has adopted a "substantial-contacts" test to determine whether venue is

proper. *See United States v. Williams*, 788 F.2d 1213 (6th Cir. 1986). To analyze whether there are "substantial contacts" within the venue, courts must consider a number of factors, including: (1) the site of the defendant's acts, (2) the elements and nature of the crime, (3) the locus of the effect of the criminal conduct, and (4) the suitability of each district for accurate fact finding. *Id*. at 1215.

"[V]enue is proper in conspiracy prosecutions in any district where the conspiracy was formed or in any district where an overt act in furtherance of the conspiracy was performed." *United States v. Zidell*, 323 F.3d 412 (6th Cir. 2003), *cert. denied*, 541 U.S. 957 (2004). An offense begun in one district and completed in another, or committed in more than one district, may be prosecuted in either district, "and it is not essential that the defendant ever have been physically present in the district in question, so long as the offense continued into this district." *Zidell*, 323 F.3d at 421-25; *see also United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001), *cert. denied*, 534 U.S. 1149 (2002) (venue is proper in the district in which a co-conspirator committed any overt act in furtherance of the conspiracy, even if the defendant never entered the district in which the indictment was brought); *United States v. Turner*, 936 F.2d 221, 226 (6th Cir. 1991) (conspiracy is a continuous crime, that is, [it] is "not completed until the drugs reach their final destination, and venue is proper in any district along the way"); *Hyde v. United States*, 225 U.S. 347, 356-367 (1912) (venue proper against defendant in district where co-conspirator carried out overt acts even though there was no evidence that the defendant had ever entered that district or that the conspiracy was formed there).

Based on the anticipated testimony, the CI will testify that Defendant Hughes agreed to provide fentanyl to Bryson to sell to a customer in Kentucky, and that the transaction was to occur in Kenton County.  While there is no dispute that Defendant Hughes provided the fentanyl to Bryson in Dayton, Ohio, Hughes knew that drugs were being delivered to the buyer in Kentucky.   In fact, he gave his co-conspirators instructions on what to do with the fentanyl in the event they were pulled over by the police, instructions that they followed after the police pulled in behind them in the Walmart parking lot.

By delivering the drugs to Kenton County, Defendant Hughes' co-conspirators continued the offense in the Eastern District of Kentucky and committed an overt act in furtherance of the conspiracy in this district.   They also attempted to destroy the evidence in this district at the behest of Defendant Hughes.   The arrest of Defendant Hughes' co-conspirators, the search and seizure of items contained in Bryson's vehicle, and the laboratory testing of the drug residue from Bryson's vehicle all occurred in this district as well.

Although the actions taken by Defendant Hughes in furtherance of the conspiracy may have occurred exclusively in Dayton, Ohio, the proffered evidence establish that several acts in furtherance of the conspiracy occurred within the Eastern District of Kentucky, any one of which would support jurisdiction and venue within this judicial district.   This case is no different than countless other drug conspiracies where alleged drug dealers sell their drugs to others knowing the drugs will be transported and ultimately distributed elsewhere.

For example, if the supplier of drugs, let's call him Defendant Smith, lives in California and sets up a drug deal with his buyer and co-defendant Wilson in Newark, New Jersey.  Defendant Smith uses couriers to transport his product for him and provides a kilogram of fentanyl in a carry-on bag to his courier Defendant Jones to transport the fentanyl to Newark, New Jersey via CVG to Newark.   Defendant Smith also pays for Jones' round trip airline ticket.  During Defendant Jones' layover at CVG, a narcotics canine alerts on the carry-on bag, leading to the discovery of the fentanyl.  Other than the cities involved and mode of transportation, this scenario is very similar to what occurred here.

If Defendants Smith, Jones and Wilson were charged in a conspiracy to distribute fentanyl in this example, there is no question that venue would be appropriate in the Eastern District of Kentucky, as the drugs were seized here, the supplier Defendant Smith knew the route of transportation from LAX to Newark included a layover at CVG and acts in furtherance of the conspiracy occurred here.   That would be the case even if Defendant Smith never stepped foot in Kentucky.

Defendant's argument fares no better with respect to Count Two, the aiding and abetting the possession with intent to distribute count.  By supplying the fentanyl, Defendant Hughes knew the fentanyl was to be delivered to the buyer in Kentucky.   He assisted them in their delivery of the fentanyl in Kentucky and did so knowingly.   The fact that Hughes gave Bryson the fentanyl when they were in Dayton, Ohio doesn't change the fact that venue for that Count is appropriate in this district.

For all of these reasons, the Court concludes that the Government has established by a preponderance of the evidence that venue is proper in this district. While the Southern District of Ohio could also be proper from a venue standpoint, there are sufficient substantial contacts in this district to support venue here. Additionally, the prosecution of Defendant Hughes in the Eastern District of Kentucky does not violate the federal venue statute or his Sixth Amendment rights.

The Court also rejects Defendant's request to transfer the case to the Southern District of Ohio pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure. Rule 21(b) permits a court to transfer a criminal proceeding "to another district for the convenience of the parties and witnesses and in the interests of justice." "When evaluating the propriety of such a motion, a district court should consider (1) the defendant's location; (2) the location of possible witnesses; (3) the location of events giving rise to the proceeding; (4) the location of relevant documents and records; (5) disruption of defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer." *United States v. Micciche*, 165 F. App'x 379, 385 (6th Cir. 2006) (citing *Platt v. Minn. Mining & Mfg., Co.*, 376 U.S. 240, 243-44 (1964)).

In this case, most of the factors, save perhaps the Defendants' location or the location of possible defense witnesses, either weigh against transferring this case or are at least neutral on the issue. As stated earlier, it is well-established that a conspiracy to distribute a controlled substance is a continuing offense that can be prosecuted in any

8

district, including the final destination of the drugs. Here, the main witnesses for trial, the Government agents, are located in the Eastern District of Kentucky. The location of significant events, such as the bust at the Walmart parking lot in Kenton County, also occurred in this district. Although there may be witnesses from Dayton relative to the Rule 404(b) evidence, those witnesses can easily appear in this district, which is less than one hour from Dayton, Ohio. And because Defendant Hughes has court appointed counsel, any costs associated with those witnesses' appearance for trial will be paid by the government. In addition, this case is on the Covington docket, which is manageable in size, and the federal courthouse in Covington is easily accessible to defense counsel, whose office is in Cincinnati, further away from Dayton than Covington.

Finally, although some Rule 404(b) witnesses will travel from Dayton, the government represents that other witnesses in the case will come from Louisville, Kentucky. Moreover, those witnesses are being called by the government, not the Defendant, and the Defendant does not explain how the admitted Rule 404(b) conduct would burden him to be tried here. Additionally, Defendant is being held in pretrial detention in Paris, Bourbon County, Kentucky, which is significantly closer to the jury division in this district (Covington) than the Southern District of Ohio (Dayton).

Put simply, Defendant has failed to identify any meaningful prejudice that will occur to him if the case proceeds in this district versus the Southern District of Ohio at Dayton. Based on these considerations, the Court finds that venue is appropriate in the Eastern District of Kentucky and that Defendant's alternative motion to transfer pursuant to Rule 21(b) is **denied**.

## V.     Conclusion

Accordingly, for the reasons set forth herein,

**IT IS ORDERED** that Defendant's motion to dismiss the indictment for improper venue, or alternatively, to transfer venue to the Southern District of Ohio (Doc. # 67) be, and is hereby **denied**.

This 26th day of March, 2025.

Signed By:
*David L. Bunning*     DB
Chief United States District Judge